CARMEN ROSARIO GARZOT, Petitioner, v. SUPERIOR COURT OF PUERTO RICO, HUMACAO PART, LUIS PEREYÓ, JUDGE, Respondent.

No. C-63-101.　　Decided May 11, 1964.

---

*F. Fernández Cuyar* and *Amancio Arias Cestero* for petitioner.
*Francisco González, Jr.*, for intervener.

Mr. Justice Blanco Lugo delivered the opinion of the Court.

On October 1, 1959, Carmen Rosario Garzot, petitioner herein, filed in the Superior Court, San Juan Part, a petition seeking to be declared the "daughter" of Juan Garzot Aguayo with *"all the rights"* corresponding to her under the law, and, consequently, to decree the nullity, inefficacy and invalidity of a will executed by Garzot. It was alleged in the complaint that Garzot died on December 11, 1958, under an open will executed on September 22 instituting as his sole and uni-

versal heir his wife, Consuelo Bernis; that during the marriage contracted with his wife prior to 1930, Garzot lived in public concubinage with plaintiff's mother; that plaintiff was born on October 20, 1931 of such relations; that plaintiff had enjoyed the continued possession of the status of illegitimate daughter of the deceased, as evidenced by his treatment of her as his daughter, publicly and privately, providing her needs for support and education until he contracted marriage, when he purchased a house for her to live in.

At the request of defendant the action was transferred to the Court of Humacao. Dismissal of the complaint was sought on the ground that it appeared from the averments that plaintiff was an adulterine daughter—a fact which was corroborated by the certificate of the marriage contracted by Garzot on April 15, 1906—and that there was no cause of action to exercise the filiation action "in the manner in which she does, since at the most (a) she would only be entitled to bear the surname of her presumptive father," and, hence, having no right to his estate, she could not seek either the nullity of the will. An order was entered on October 4, 1960, in which the court pointed out that the existence of an acknowledgment by voluntary action of the presumptive father did not appear from the averments wherefore, according to the provisions of Act No. 229 of May 12, 1942, as amended by Act No. 243 of May 12, 1945, 31 L.P.R.A. § 502, and to the doctrine in *Elicier* v. *Heirs of Cautiño*, 70 P.R.R. 407 (1949); *Torres* v. *Heirs of Cautiño*, 70 P.R.R. 614 (1949); *Cruz* v. *Andrini*, 66 P.R.R. 119 (1946); and *Fernández* v. *Heirs of Fernández*, 66 P.R.R. 831 (1947), plaintiff would only be entitled—if warranted by the evidence—to the limited acknowledgment of bearing the presumptive father's surname, and no more. It therefore granted the motion to dismiss, but since plaintiff could seek acknowledg-

ment for the purposes of bearing the surname, it granted her a term of 10 days to amend the complaint.[1]

Plaintiff moved for judgment in accordance with the terms of the aforesaid order and the provisions of Rule 44.2 of the Rules of Civil Procedure of 1958[2] "without detriment to the prosecution independently of that aspect as to which the motion to dismiss was granted permitting plaintiff to amend the complaint." The motion was granted. Judgment was rendered in which, after reproducing the grounds of law stated in the order of dismissal, the trial court said:

"Having examined the facts recited, the averments of the complaint, and the motion of plaintiff praying for judgment in accordance with the provisions of Rule 44.2 of the Rules of Civil Procedure, and in consonance with the order of October 4, 1960, dismissing the complaint and granting a term of 10 days to file an amended complaint, and since the court is of the opinion that there is no need nor any reason to postpone the rendition of judgment on the claims made until final disposition of the action, the court proceeds to render and does hereby render in this case the following

---

[1] It was not indispensable to amend the complaint, since, as it may be seen from the summary which we have made above, the averments of the original complaint are sufficient to warrant an acknowledgment, even for the limited purposes of bearing the surname.

[2] Rule 44.2, relative to provisions on multiple claims, reads as follows:

"When more than one claim is presented in action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but not upon all of the claims *only upon an express determination that there is no just reason for delay in pronouncing judgment on such claims until final adjudication of the case and upon an express direction for entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims, *shall not terminate the action as to any of the claims,* and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." (Italics ours.)

On the correctness of rendering judgments in cases involving multiple claims, see 3 Barron & Holtzoff, Federal Practice and Procedure, § 1193, and 6 Moore, Federal Practice, § 54.23 (4) (2d ed.).

JUDGMENT:

"The court dismisses the complaint as to plaintiff's filiation as daughter of Juan Garzot Aguayo for all legal purposes. It dismisses the complaint as to the cause of action exercised by plaintiff seeking the nullity of the will executed by Juan Garzot Aguayo.

"The court expressly orders that this judgment be entered and notified, without special award of costs. The present action may be further prosecuted solely for the purposes of determining plaintiff's acknowledgment as daughter of Juan Garzot Aguayo and of her right to use and bear her presumptive father's surname.

"Let it be entered and notified."

Within the term of 30 days after filing in the record a copy of the notice of the judgment, a petition was filed in this Court to review the same alleging as only error committed by the trial court "having dismissed plaintiff's complaint . . . *for all legal purposes*, and as to the cause of action exercised by appellant seeking the nullity of the will executed by Juan Garzot Aguayo." On February 24, 1961, the full Court entered an order denying the review sought, it being stated therein that both Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra were of the opinion that the writ should be issued.

Thus the suit withered without plaintiff having taken further action for recognition of the limited purpose permitted by the judgment of the Superior Court, sustained by our action in refusing to review. However, encouraged by the pronouncement which we shall copy below, contained in the opinion rendered in *Ocasio* v. *Díaz*, 88 P.R.R. 658 (1963),[3] Carmen Rosario Garzot—who, we have seen, had been using

---

[3] Regarding the date of birth (prior to 1942), civil status of the progenitor (married father), and date of death of the presumptive father (subsequent to July 25, 1952), the facts presented in this action are identical with those which we considered in *Camacho* v. *Torres*, R-62-215; *León* v. *Zayas*, Ap. 12490; and *Ocasio* v. *Díaz*, R-85.

the presumptive father's surname—again resorted to this Court on August 2, 1963, by means of a motion for reconsideration[4] of the order which we had entered two and one-half years ago denying the petition for review:

"Any judicial declaration of status of child shall acknowledge and decree that the child so declared shall have with respect to his parents and with respect to the property left by the latter, the same rights that correspond to the legitimate children, regardless of the date or other circumstances of his birth, with the exception that the right of inheritance with respect to children born out of wedlock prior to August 10, 1942, who did not have the condition of natural children according to the former legislation and who were not acknowledged by the voluntary action of their parents, shall be acknowledged with respect to the deaths occurred at the beginning of the day of July 25, 1952."

On November 26, 1963, we set aside our order of February 24, 1961 refusing to issue the writ of review, and, considering the petition filed as one of certiorari, we granted to appellee a term to show cause why the action of the Humacao Part dismissing the action of filiation for all legal purposes should not be set aside. In due time appellee complied with our order.

■■ It is necessary to point up forthwith that the action which gave rise to the present petition *is still pending*. We are not dealing with an action in which a final and unappeal-

---

[4] In the motion for reconsideration it was alleged that Manuel Orraca Torres had withdrawn from the representation of appellant on January 16, 1961, when he delivered the record to her, and that inasmuch as the order denying the petition for review had been notified to that attorney, the interested party had not learned about the outcome of her petition until, encouraged by the results of other actions similar to hers, she had resorted to her present attorneys to find out what decision had been made in her case. From an examination of the record it appears that Orraca actually withdrew from the representation on the aforesaid date, but no order accepting the same was ever entered by this Court. It also appears that notice of the order denying the writ was served on Orraca on February 27, 1961.

able judgment has been rendered on a basic fact, such as appellant's status of daughter. The main question, if not the only one, for adjudication by the trial court after the evidence available to the parties is presented is precisely whether Carmen Rosario Garzot is the daughter of the late Juan Garzot Aguayo. Assuming that the same is decided in the affirmative, pursuant to repeated pronouncements of the opinion rendered in *Ocasio* v. *Díaz*, 88 P.R.R. 658 (1963), that court could not limit the effects of the judicial acknowledgment to the right to bear the progenitor's surname, since such power "was absolutely and definitively exhausted at the end of July 24, 1952" and "is repugnant to our Constitution." The juridical effects which the declaration of daughter entails by virtue of the acknowledgment are determined by the law itself and the Constitution, and the same cannot be restricted or limited by acts of the father, *Rivera* v. *Rivera*, 78 P.R.R. 865 (1956); *Cortés* v. *Cortés*, 73 P.R.R. 643 (1952), nor by judicial pronouncements. The consideration of public policy involved in this determination, not only for the purposes of adjudicating the status of plaintiff but also her successory rights, *Ex parte Orona*, 87 P.R.R. 800 (1963), bar the strict application of the doctrine of the case law and likewise that the invocation of res judicata may defeat the consecration of all the rights at present conferred and recognized in accordance with the filial status sought, *Pérez* v. *Bauzá*, 83 P.R.R. 213 (1961).

We cannot agree with appellee that the effect of our action is to revive the actions of filiation already terminated and decided on the basis of the interpretation of the law which we abandoned in *Ocasio*. Except where extraordinary circumstances concur, the specific identity of which we cannot anticipate at this time, in all likelihood, since the judgments involved are final and *unappealable*, the defense of res judicata would bar their relitigation. This ghost of Banquo should not disturb our tranquility. Nor should we con-

cern ourselves either with transactions involving the estate which may have been made subsequent to our original decision. Any disposition of property made in good faith shall be protected by established principles of law which we need not mention.

■ Appellee insists that the *Ocasio* case is distinguishable, since, unlike the present case, it alleged the existence of a voluntary act of acknowledgment, specifically the admission of such act in the answer but attributing to it a limited effect. She seems to forget that one of the most important pronouncements in the opinion *supra* is the adoption of the implied or tacit acknowledgment within the concept of "voluntary action." It is said:

". . . Of course, among the variety of possible ways there would always be the direct expression of the will in a private document written and signed by him, in testament, in the birth certificate and in any other public document. There would always be the conduct, the treatment, the behavior, all the acts performed by the father with respect to his child and from which paternity could be reasonably inferred, or considered as a tacit confession of paternity, even though it would not fall within the rule of uninterrupted possession of status of child mentioned in § 125, which is, after all, but the legal grade that must be made by the implied acknowledgment within the discretionary powers the courts have to weigh the evidence.

"The law took into account the human experience, the realities of life. The different behaviors of man in the face of the different social situations. It refused to frame voluntary action within the impossible formulas which have been traditionally rejected by social demands."

From an examination of the averments of this action it will be observed that they comply with the norm stated.

It matters not as maintained by the appellee, that our action in the disposition of the present petition be infrequent. The circumstances concurring herein are not frequent either. Hence, the conformity between the situation and the remedy.

. The order of October 4, 1960 and the judgment of November 25, 1960, will be set aside and the case remanded to the Superior Court, Humacao Part, for further proceedings.

Mr. Justice Santana Becerra concurred in a separate opinion. Mr. Justice Pérez Pimentel dissented.

—O—

MR. JUSTICE SANTANA BECERRA, concurring.

San Juan, Puerto Rico, May 11, 1964

I subscribe without any reservation to the opinion of the Court. The opinion believes it is necessary to emphasize the fact that the action giving rise to the pronouncements at this time "is still pending." In view of defendant's contentions, I wish to say the following regarding my criterion:

Filial pronouncements under the former legislation *made during the lifetime of the father* restricting the right to the inheritance, even if they are final, are without merit and, in my judgment, they cannot be invoked by reason of the res judicata or of the case law against a child who claims his inheritance in those situations in which, the pronouncement *having been made during the lifetime of the father*, I repeat, the latter has died or dies on or after July 25, 1952.

This criterion is consistent with the basic fact underlying every filial question that the hereditary right should be determined by the law in force at the time of opening the inheritance, and every pronouncement so made with juridical consequences *in futuro* would lack ipso jure effectiveness under present legislation to the contrary as of 1952, and such judicial pronouncement may not prevail against the paramount mandate of the Constitution and of the law by virtue of any doctrine of res judicata or of the case law.